Mr. Schneider, whenever you're ready. Good morning. The question before this court is, can a reasonable person who reviews and weighs the evidence from both sides conclude that Karen Peets had the ability to perform light work? In this case, if the ALJ had found sedentary work, then she would have gritted out, meaning based on her age and other standards, she would have been found disabled. But the judge instead found that she could do light work and could do some of her past work. I'm sorry, let me interrupt for just a second. I thought our standard of review was, did Correct. And that's what the substantial evidence test is. Can a reasonable person review and weigh the evidence? Well, the substantial evidence standard is not exactly like would a reasonable person reach this conclusion. It's could a reasonable person reach this conclusion, right? I'm sorry? The standard is not exactly would a reasonable person reach the conclusion, but it's could a reasonable person reach this conclusion, meaning there's something in the record to support the decision. And even if we might think it should be otherwise, we would still withhold it unless any reasonable person would have to conclude differently, right? I said could a reasonable person. Okay, fine. I get it. I just thought it was useful. And in this case, the objective medical evidence and clinical evidence indicated that Ms. Peets was limited by her low back pain, lumbar radiculopathy, grade II spondylosis, migraine headaches, left knee pain, carpal tunnel syndrome, left shoulder pain, obesity, anxiety, depression, and PTSD. But the ALJ acknowledges all of those conditions, right? I mean, maybe not obesity. I understand it doesn't specifically talk about obesity, and so maybe we'll talk about whether that makes sense. But most of these conditions the ALJ does acknowledge. No, he did not acknowledge that her anxiety and depression at step two was severe, even though his own psychologist, Dr. Hartman, found that it was, that she would be limited. He addresses mental health problems. And he has a long paragraph discussing the support for mental health problems and whether they were severe or not and found that they were not severe. Yes, he did. But he didn't rely, that was not relying on the medical evidence. Well, he says about Mr. Hartman, he says, well, Dr. Hartman's opinion was somewhat vague and concluding a fair ability to function and no more than mild difficulties. He documented the claimant's full array of reported activities of daily living, socialization, and use of public transportation, all of which suggest a higher level, more consistent with non-severe impairment. And it goes on. The treatment records note relatively mild interference with interpersonal and occupational functions. So what he's doing, essentially, is saying, okay, he has an overall conclusion about a fair ability to function. I'm not sure exactly what that means, but I'm looking at all the documented daily activities, and that itself is evidence that she can function, right? Right. And that's because he incorrectly So why is he not allowed to do that? Because he incorrectly evaluated the statements of the examining sources and deferred instead to non-examining consultants who they had to rely on the examining and treating sources. No, I mean, just in terms of the framework in which he's making this decision, right, it used to be that the Social Security Administration had a treating physician rule, which required deference to the treating, but it no longer has that. That's right. So this case is under the new regulation, which says that the ALJ is not to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative findings, including those from a claimant's medical sources. Yeah. So there's no inherent – so the evidence that a medical source offers an opinion is not more weighty than evidence of what the claimant's daily activities are, right? I absolutely disagree. This Court has held that you cannot use evidence of daily activities to reject the views of the treating and examining doctors. You said that in the context of the treating physician rule, didn't you? It's different under the treating physician rule where there was a presumption, but you still have to analyze and explain the opinions, and you have to use the Part C criteria of length of relationship, the treating relationship, the specialty. And in this case, the consulting psychologist found that she did have – her mental impairments would interfere with her daily living. He found she only had a fair ability to interact with other people. She only had a fair ability after examining her to concentrate and sustain. Fair ability and impairment? Right, so if Hartman says fair ability to function and no more than mild difficulties, fair ability means like not unlimited, but it does mean an ability to function. But it means limited. It means there's a limitation, and Dr. Hartman found that there were limitations, and the judge – But why is that finding inconsistent with the determination that she's capable of light work? I mean, the light work actually does put a lot of limitations on the work that she's – Because the judge did not include in his RFC, in his residual functional capacity, that she had any limitations interacting with other people. He did not find any limitations based on her concentration. And that is not – there is not a scintilla of evidence on the record regarding that, that she did not have those limitations. And physically – Well, he does make a finding that she's capable of normal – of socialization, that she socializes. But there are limitations on some of the interactions with other people. No, not in the – In an environment without a lot of noise, I guess he had that limitation. And there's movement limitations. Yeah, right. But he did not find that she had any limitations in concentration and interacting with people in his RFC. But the thing is that there is no evidence that she could perform light work, that his own expert found that she limped, that she had other limitations, she needed braces. To do light work, you have to be able to stand and walk seven hours a day and lift up to 20 pounds. And there is no evidence of that. Rather, she had severe spinal disease. She had pain. She was being treated for pain for many years. She had injections from pain. She had a positive straight leg test, which is one of the objective standards for showing radiculopathy, pain, and numbness. She had decreased tendon reflexes and decreased sensation on exam. She was regularly treated for her pain. She had injections, went to a pain clinic, did physical therapy. She was prescribed very strong medication, Klonopin, hydrocodone, for her impairments. And Dr. Wasif did not find that she could do light work. He found she had moderate limitations, and the judge could not rely on that to find that she could do light work. The ALJ failed to correctly evaluate the evidence from her treating physician's assistant. He didn't even discuss the evidence from her nurse practitioner, Jennifer Canale. He didn't even discuss and consider the evidence from Dr. Cerklewicz, nurse practitioner Klimkiewicz. And now under the new regs, nurse practitioners and physician assistants are considered medical sources. And even her therapist, Amy Weir, who is another source and doesn't get as much weight, you have to consider what she said. Instead, he relied upon the non-examining opinion of Dr. Sharif Najafi, who's a pediatrician. And her opinions are not even supported by her own summary of the evidence. And plus, these consultative opinions were stale. They were made almost two years before the hearing, and after that, there is much more evidence. Thank you very much, Mr. Schneider. You've reserved some time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Ms. Carter. Good morning, Your Honors. May it please the Court. I'm Molly Carter for the appellee, the Acting Commissioner. This Court should affirm the ALJ's finding that Ms. Peetz was not disabled within the meaning of the Social Security Act. The ALJ applied the appropriate legal standards, and substantial evidence supports his findings. Ms. Peetz's challenges amount to a request that this Court simply weigh the evidence differently, which is inappropriate on substantial evidence review. Can I ask a question? I'm just trying to make sure I understand the record. We have this non-examining consultative opinion, which weighed heavily. And when I go to the record to try to find it, I want to make sure I'm looking at the right thing. It looks like there's a long Social Security form that's filled out largely by administrative people, and then there's like a two-page section that's the medical consultative exam. Am I understanding that right? I have it in the record on appeal at 144 and 145. Is that what we have from that doctor, or is there some separate report that Dr. Sharif, I don't want to get the name wrong, that that doctor did to support the analysis? What we have in the record is what is at pages 142 to 144, Your Honor. The Dr. Sharif Najafi fills out the form indicating specific functional limitations, and then on page 144 there's the explanation, which is where the doctors can indicate what they considered or any other information that they're listing to support their opinion. So that is Dr. Sharif Najafi's assessment. So on 144 we have impairment, migraine, priority, secondary, severity, severe. Dysfunction of major joints, priority, primary, severity, severe. That's the list you're talking about where the doctor describes the... No, Your Honor. I have at pages, I'm referring to the pages of the administrative record before the district court, which is how they're referred to throughout the briefs. So I have at page 139 that list of severe and non-severe impairments, migraines, dysfunction. Okay. That's helpful to me. So there's two different sets of numbers, and I think I might have been looking at the wrong... So the one, the page that I was referring to as the explanation, at least in the district court record, it's page 144. It's right above Dr. Sharif Najafi's signature. And it's in the exhibits. Again, this is before the district court. It's exhibit B3A. It's page 12. Thank you. All right. So it's the additional explanation there from Dr. Sharif. Yes, Your Honor. Okay. Sharif Najafi. Can I, and I know you and I have had this conversation before, so I don't think this is going to be a new question. One of the things I struggle with is the line between the types of observations and conclusions that an ALJ is appropriately qualified to make. For example, I conclude based on the evidence that you're engaging in activities that are inconsistent with your reporting limitations. But then there's this class of conclusions that we see, and the ALJ relied on it in rejecting Dr. Wassef's conclusion that there were moderate limitations regarding standing and walking. And so I think the argument is one of the levels of arguments. We don't have to deal with that conclusion because the ALJ essentially discounted it. But the reason that the ALJ discounted it was that the ALJ pointed to lack of edema and muscle atrophy, no deficits in stable, non-tender joints. In other words, the ALJ looked at objective medical findings and drew a conclusion about their impact on the impairment or lack thereof. And I'm trying to figure out where the line is between when the ALJ can just go rogue on those things and when the ALJ has to tie those observations to some other medical evidence that explains that those, in fact, do undermine the claim. I have several points in response that I hope will allay your concerns, Your Honor. One is that even Dr. Wassef's opinion that Ms. Peetz had a moderate limitation in standing and walking, which the ALJ acknowledged was sort of vague, this court has found that that is consistent with the ability to do the standing and walking required of light work. So the ALJ could have said nothing else and found the opinion persuasive, and there wouldn't be a problem at all. Second, the ALJ made very clear that to the extent that he was interpreting that moderate limitation as perhaps less than light work, he was finding more persuasive Dr. Sharif Najafi's assessment, Dr. Sharif Najafi having reviewed Dr. Wassef's report in context of other evidence in the record and finding that based on the totality of the record, the record was more consistent with the ability to stand and walk for six hours total in a work day, which is what's required of light work. But did Dr. Sharif, what chief, I should have learned that name, did that doctor actually make these observations that the lack of edema and muscle atrophy, the lack of deficits in stable non-tender joints, were those part of the analysis that the ALJ then could rely on because a doctor had said them? Or that's why I was trying to... The ALJ went on to explain that in terms of standing and walking, although Dr. Wassef had observed a slight limp at the consultative examination, other doctors throughout the relevant period consistently observed normal ambulation. And so that was part of the reason for discounting. And because the ALJ is precisely instructed and required to consider the consistency of an opinion with the rest of the record, it certainly was not outside the bounds of the requirements. Normal ambulation is not something that requires a doctor to determine whether it's normal or not, if you're walking normally or walking normally. And that's why I was really focused on the observations about edema, muscle atrophy, non-tender joints. I mean, those are the kinds of... I'm trying to distinguish... And those are exactly the kinds of things that Dr. Wassef put in that additional explanation section. Excuse me, Dr. Sharif Najafi. Those are the kinds of things or those particular... Dr. Sharif Najafi on page 144 noted the consultative examination and said, claimant appeared in no distress, gait with a slight limp, stance normal, unable to squat. Claimant was wearing left wrist brace and left knee brace, needed no help changing for the exam or getting off and on the exam table, able to rise from chair without difficulty, full range of motion throughout except left knee flexion extension 100 degrees. So Dr. Sharif Najafi reviewed the exact medical findings from Dr. Wassef's opinion. And didn't say anything about the lack of edema or muscle atrophy. That wasn't in any way articulated as a basis for... at least from what you just read. I didn't hear that. And so I'm just trying to figure out where that comes from in the ALJ's analysis if it didn't come from a doctor. It doesn't have to come from a doctor, Your Honor. The ALJ is required to consider all of the evidence in assessing the RFC and particularly... So that's within the scope of what, in your view, is fair game. That's not the ALJ making a medical assessment. That's fair game for the ALJ to make evaluations about the impact of the edema or lack thereof on the disability. Your Honor, it's not just my view. It's in the regulations that the ALJ is required to consider the medical evidence both in terms of assessing the RFC and in assessing the consistency and supportability of opinions. I would also refer you to SSR 16-3P, which specifically lists atrophy or lack thereof as the type of thing that would be expected to be seen if an individual is so disabled that she can't... Can you tell me that citation again? Social Security Ruling 16-3P. All right. Thank you. It addresses subjective complaints of pain, and it's cited in our brief. Well, the ALJ says, Dr. Watson's portion noting moderate limitations regarding standing and walking appear to be too restrictive, particularly when coupling the limited clinical findings such as good and equal strength, no edema or muscle atrophy, no sensory deficits, and stable and non-tender joints. So I'm going to take it that there's some other clinical finding from a doctor that describes edema and muscle atrophy. Yes, the other providers consistently observed things like normal strength, normal ambulation, no abnormalities on physical exam, things like that. But your more general point is the determination of whether someone is disabled is a determination to be made by the commissioner, not by a treating physician. Right. That is why the administration repealed the treating physician rule because they said this is a determination that was to be made by the administration. It's not something under – like, in fact, they said in the rulemaking to defer to a treating physician's opinion would abdicate the administration's responsibility under the Social Security Act. Absolutely, Your Honor. The ALJ was required to assess each opinion, whether from a treating source or otherwise, within the meaning of the new regulations, which is what was done here. The ALJ explained how persuasive these opinions were in terms of their supportability and consistency and found based both on the opinions and their consistency with the objective evidence throughout the record as supporting the ability to do the standing and walking required. And so if an ALJ says, okay, I have an opinion from a medical source, but that's just inconsistent with her – the reported daily activities in which she engages, and so I don't find it credible, is the ALJ allowed to do that? It depends on the opinion and the activities, Your Honor. So here the ALJ had – I just want to – I want to make sure I understand. I wasn't asking a specific question. Just in general. In general. The ALJ is allowed to look at the record and determine whether the medical opinion is consistent with other evidence that might come directly from the claimant or from some other sources about her activities, right? Certainly. It depends on – as with everything, it depends on the substantiality of that evidence, but that is something that is permitted – the ALJ is permitted to consider. The regulations in terms of consistency describe consistency with both medical and non-medical evidence, and daily activities would be one component of non-medical evidence. So, for example, a claimant who suggests that she's disabled because she has significant standing and walking limitations and one of her activities is walking regularly for exercise, that is one piece of relevant evidence in addition to a whole host of other evidence. I mean, here there do seem to be some misunderstandings or disputes. What about the basketball? Your Honor, the basketball is a very small component of – I know it is a small one, but it does seem like she has an explanation for why she said that she was playing basketball. But I suppose she did say she was playing basketball. She said she was playing basketball. She alleged that she sustained an injury while playing basketball. Moreover, even if all she was doing is holding a basketball and moving at one time, that's inconsistent with her allegations that she was hardly able to use her left wrist at all. So it is certainly – it's relevant. If that was the only thing the ALJ had said and the only piece of evidence – But it's not relevant to her lack of a knee injury, I suppose, if there was that additional explanation. No, and I believe the ALJ was citing it in relation to her wrist impairment, to which it is more relevant. Well, he did say at one time that playing basketball is inconsistent with having a knee injury. Which is true. Which is true. If she was playing basketball. If she said she was playing basketball and it's a little later that she says that it wasn't a real game of basketball. Again, if that was the only thing the ALJ had said, we might be in a different realm, Your Honor. But it's not the only piece of evidence that supports the RFC, and it's not even the only daily activity the ALJ pointed to with regard to the knee. Again, the walking evidence is relevant as well as the limited treatment history, the success of the injections, and the opinion evidence, and all of the objective findings of normal amputation. I was a little concerned about the readiness with which the ALJ dismissed her reports of pain, though. None of the treating physicians or other physicians suggested she was exaggerating her pain. She took treatment for pain with injections and different kinds of treatment. But he seemed to talk about her needle pointing, her walking, which she was doing to reduce obesity. You know, it could have been a very slow pace and so on. He seemed to kind of dismiss her and find her not credible as to pain. Based on those kind of very generic observations, without any of her physicians suggesting that her need for treatment was exaggerated. First, Your Honor, he did not find her not credible. He found that her subjective complaints regarding her limitations and functional effects were not entirely consistent with the record. The ALJ does not evaluate credibility of a claimant. Second, the ALJ- Doesn't that suggest a lack of credibility, that he didn't believe that she was really suffering? It suggests that he did not accept her subjective complaints without question, which is precisely what he's allowed to do. This Court has made very clear that the ALJ is not required to accept subjective complaints. The ALJ is required to evaluate them within the meaning of the regulations and SSR 163P, which I referred to before. And that finding is reserved solely to the ALJ. It wouldn't have mattered even if every single doctor had said, I find she's 100% credible. That evaluation is for the ALJ. It would be inappropriate for the ALJ to find her believable or not believable based on a doctor's finding. That's not what the ALJ is supposed to be doing. Moreover, in terms of the actual factors that the ALJ considered, as is detailed in our brief, the ALJ considered a number of the regulatory factors, including the objective medical evidence, her daily activities, her treatment history, the success of her treatment, the type of medication she was receiving, as well as the opinion evidence, which largely weighed in favor of the RFC the ALJ assessed as well. So the ALJ went through exactly all the factors that he was required to and did the analysis that the regulations and the Social Security ruling require. If Your Honors have no further questions, we ask that you affirm. Thank you very much, Ms. Carter. We'll turn it back to Mr. Schneider on rebuttal. Under the standard that the commissioner is urging, you could never reverse the finding of an ALJ. If he can say anything he wants, it has to be substantial evidence. And evidence is substantial. Well, you could reverse it if, in fact, the standard is met that any reasonable person would have decided otherwise, if there is no evidence to support the conclusion. Your Honor, you have to look at the evidence from both sides. That's what the Supreme Court has said. This is not summary judgment where any evidence that somebody could believe it. If there is one fact on one side and 1,000 on the other, then that is not substantial. It involves looking at the complete record from both sides. And in this case, with MRIs, with straight leg raises, with her treatment, there is not substantial evidence not to credit her testimony about her limitations due to pain. The judge cherry-picked a few things, the hand where she said a basketball hit her hand, or finding that she went bowling when clearly she had stopped going bowling, or that she did some crafting for a few minutes. He only mentions the bowling at step two of the analysis, and he finds in her favor at that point, right? Right. He found her severe, but then you have to assess the limitations. Acting against her? He never refers to it again. He held it against her in assessing her credibility and finding that it was circular reasoning. He said the doctor's opinions were not credible because of her reported activities, and then the reported activities were not support. They didn't support that finding. If you looked at her testimony, she needed help doing most things. Let me interject for a minute. We're talking about the period that she claimed, a 20-month period from January 2018 to August 2019, is that right? If that's when the decision was made. I think that's right, and this isn't in the record so far as I know, but has she since applied for disability benefits, do you know? Who's that? In this case, look, I think this is social security disability and not SSI. I don't believe that. I thought she was seeking SSI. She was, yes, seeking SSI, and yes. Normally this kind of report might have supported sedentary, although I don't think it really did because of her mental limitations. But the judge knew she would grit out if he found sedentary, and he went out of his way to cherry pick, to find that she could do light work. Are you suggesting he had some personal animus to her? No. It wasn't personal animus, but I think it was still bias looking to find. In any other case, if a person wouldn't have gritted out, I think he probably would have found sedentary work. But because she's 52, if she was limited to sedentary, and he didn't believe her, but yet she was supported by the objective medical evidence, and there was not evidence to support the RFC. Okay, Mr. Schneider, I think we have that argument. Thank you very much for your argument.